UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT H.,

                Plaintiff,                              Case No. 2:22-cv-11346
                                                       District Judge Victoria A. Roberts
v.                                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 20) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

        Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security (Commissioner) denying his

application for Disability Insurance (DI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 17), the Commissioner's cross-motion for summary judgment (ECF No. 20),[1] and the administrative record (ECF No. 9).

### A.    Background and Administrative History

In his February 18, 2019 application for disability insurance benefits (DIB), Plaintiff alleges his disability began on December 1, 2018, at the age of 40.  (ECF No. 9, PageID.289-295.)  In his disability report, he lists HIV, back problems, neuropathy in left leg, epilepsy grand mal seizures, both hip problems, and massive depressive disorder as limiting his ability to work.  (ECF No. 9, PageID.327.)  His application was denied on September 5, 2019.  (ECF No. 9, PageID.170-174.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 9, PageID.189-190.)  On March 9, 2020, ALJ William Reamon postponed Plaintiff's hearing, as Plaintiff had recently obtained an attorney.  (ECF No. 9, PageID.140- 148.)  Then on October 27, 2020, ALJ Reamon held a full hearing, at which Plaintiff and a vocational expert (VE), James Fuller, testified.  (ECF No. 9, PageID.109-140.)  On March 24, 2021, ALJ Reamon issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 9, PageID.86-108.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 9, PageID.286-288.)  However, on March 30, 2022, the Appeals Council

---

[1] The Court denied the Commissioner's request to file a sur-reply.  (ECF No. 24.)

denied Plaintiff's request for review.  (ECF No. 9, PageID.69-74.)  Thus, ALJ

Reamon's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 16, 2022.  (ECF No.

1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 348 pages, which were

available to the ALJ at the time of his March 24, 2021 decision.  (ECF No. 9,

PageID.409-757 [Exhibits 1F-16F].)  These materials will be discussed in detail, as

necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since December 1, 2018, the alleged onset date.  (ECF No. 9,

PageID.91.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: osteoarthritis of the hips, degenerative disc disease of the lumbar

spine, human immunodeficiency virus (HIV) and neuropathy, chronic obstructive

pulmonary disease (COPD), depression/bipolar disorder, attention deficit

hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), and

substance use disorder.  (ECF No. 9, PageID.91-92.)[2]  At **Step 3**, the ALJ found

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  (ECF No. 9,

PageID.92-95.)  **Between Steps 3 and 4** of the sequential process, the ALJ

evaluated Plaintiff's residual functional capacity (RFC)[3] and determined that

Plaintiff had the RFC:

> to perform medium work . . . except that he can lift/carry up to fifty
> pounds occasionally, up to twenty pounds frequently, and up to ten
> pounds constantly.  Claimant can frequently, as opposed to constantly,
> reach in all directions, and can frequently push and pull with the
> bilateral upper extremities.  Claimant can frequently perform
> handling, fingering, and feeling with the bilateral upper extremities.
> Claimant can frequently use the bilateral lower extremities for
> operation of foot controls.  Claimant can occasionally climb ladders,
> ropes, and scaffolds; can frequently climb ramps and stairs, stoop,
> kneel, crouch, and crawl; and can continuously balance.  Claimant can
> tolerate no exposure to unprotected heights; and can tolerate
> occasional exposure to dangerous moving machinery, extremes of
> temperature, humidity, vibrations, fumes, odors, dusts, gases, and
> poor ventilation.  Claimant can frequently operate a motor vehicle,
> and can tolerate exposure to noise levels up to loud levels (i.e., Level
> 4 as defined by the GOE [sic, DOT] consistent with heavy traffic
> areas or earth-moving equipment).  Claimant can understand,
> remember, and carry out simple, routine, repetitive tasks and
> instructions in a timely manner.  Claimant can tolerate occasional

---

[2] The ALJ acknowledged Plaintiff's claim of epilepsy, but found it not to be a
medically determinable impairment.  (ECF No. 9, PageID.92.)  Plaintiff does not
challenge this finding on appeal.

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

changes in work settings and processes and respond appropriately to
usual work changes in a routine work setting.

(ECF No. 9, PageID.95-101.)  At **Step 4**, the ALJ determined that Plaintiff was

unable to perform any past relevant work.  (ECF No. 9, PageID.101.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform, such as packer, sorter, and sealer.  (ECF No.

9, PageID.102.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, since December 1, 2018.  (ECF

No. 9, PageID.102-103.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)). In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's argument is somewhat difficult to follow.  In summary, he states:

"[T]he ALJ committed reversible error by failing to reach a materiality

determination as required by 20 C.F.R. § 416.935 and by improperly rejecting the

[opinion of Dr. Suniti Kukreja-Barua].  The ALJ's errors were prejudicial to [him],

and the error was not harmless, because by performing an improper materiality

analysis in this case the ALJ failed to account for the 'gross' total of a claimant's

limitations, inclusive of the limitations caused by [his] drug and alcohol abuse."

(ECF No. 17, PageID.796.)  At the same time, however, he acknowledges that per

20 C.F.R. §§ 404.1525(a) and 416.935(a), the materiality analysis is only required

where the claimant has been found disabled (ECF No. 17, PageID.787-789), a

finding which was not made here.  The Commissioner opposes Plaintiff's motion,

asserting:

> While Plaintiff believes that the mere presence of a substance abuse
> disorder requires the ALJ to determine if his substance abuse was a
> material factor contributing to his disability, that analysis only occurs
> if the ALJ finds that Plaintiff is disabled, which did not occur here.
> The ALJ also properly evaluated the medical expert's opinion and
> nothing in her interrogatory responses required the ALJ to conduct the
> drug and alcohol abuse materiality analysis.

(ECF No. 20, PageID.805.)

In his reply brief, Plaintiff argues that: (1) the Commissioner effectively

conceded that if the doctor reached a materiality determination, the ALJ was

obligated to perform the analysis as well; and (2) the marked limitations were assessed by Dr. Kukreja-Barua due to Plaintiff's struggle with substance abuse, so "the ALJ found the opinion largely unpersuasive due to an internal inconsistency that did not exist." (ECF No. 21, PageID.820-823.) Further, he seeks to clarify his materiality argument, asserting:

> Finally, to touch on the Defendant's argument that the ALJ was not required to engage in the materiality analysis given the ALJ never determined that he was disabled (Def. Memo, P. 4), this argument is also flawed. The ALJ would have found that [he] was disabled if the ALJ factored into account [his] marked limitations. However, the ALJ found the opinion assessing the marked mental limitations to be 'largely unpersuasive' because it was purportedly internally inconsistent. But, it was not internally inconsistent at all.

> *   *   *

> By rejecting the opinion in this manner, and without properly developing the record, the ALJ did not factor into account the gross total of all limitations, inclusive of limitations related to substance abuse, before formulating an RFC. This is error.

(ECF No. 21, PageID.824.)

### 1. The Court should find that Plaintiff has demonstrated no error in the ALJ's analysis of Dr. Suniti Kukreja-Barua's medical opinion

Although unclear from Plaintiff's summary judgment motion alone, from a review of that motion in conjunction with the reply brief summarized above, I believe Plaintiff argues that had the ALJ properly evaluated the opinion of Dr. Kukreja-Barua, he would have found him disabled, and been required to complete

the materiality analysis required by 20 C.F.R. § 404.1535(a).  For the reasons that follow, I disagree.  Accordingly, I will analyze the ALJ's treatment of the expert opinion at the outset.[4]

### a.    Standard

As Plaintiff filed his application after March 17, 2017, the ALJ reviewed the subject medical opinions according to the standards provided in 20 C.F.R. § 404.1520c, which states, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted and articulate the findings using the following factors: supportability, consistency, relationship with the claimant, and specialization, with supportability and consistency being the most important.  20 C.F.R. § 404.1520c(b)(2) and (c).

---

[4] I would normally refrain from reviewing any issue not clearly identified as such on the "Issues Presented" page of Plaintiff's opening brief, as required by my Practice Guidelines, and Plaintiff's counsel is so warned.  Moreover, issues first raised in a reply brief are waived.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  That said, I find the expert issue so intertwined in the main argument here that it requires separate scrutiny.

**b.     Medical interrogatory by Dr. Kukreja-Barua, Ph.D**

In November 2020, upon request from the ALJ, Dr. Kukreja-Barua provided

responses to medical interrogatories.  (ECF No. 9, PageID.740-748.)  In the initial

portion, he checks boxes indicating that Plaintiff exhibits no restriction in

understanding and remembering simple instructions and in carrying out simple

instructions; mild restriction in the ability to make judgments on simple work-

related decisions, carry out complex instructions, and interact appropriately with

the public, supervisors, and co-workers; moderate restriction in carrying out

complex instructions and in the ability to make judgments on complex work-

related decisions; and marked restriction in the ability to respond appropriately to

usual work situations and to changes in a routine work setting.  At the bottom of

this initial portion, the form asks: "If the claimant's impairment(s) include alcohol

and/or substance abuse, do these impairments contribute to any of the claimant's

limitations as set forth above?  If so, please identify and explain what changes you

would make to your answers if the claimant was totally abstinent from alcohol

and/or substance use/abuse."  (ECF No. 9, PageID.742.)  To this prompt, Dr.

Kukreja-Barua wrote only, "Substance use exacerbates symptoms and prevents

recovery."  (ECF No. 9, PageID.742.)  Then, on the second form, Dr. Kukreja-

Barua checked boxes finding Plaintiff had mild limitations in understanding,

remembering, or applying information and interacting with others, but marked

10

limitations in concentrating, persisting, or maintaining pace and adapting or

managing oneself.  (ECF No. 9, PageID.745.)

### c.    ALJ Reamon found the opinion largely unpersuasive

ALJ Reamon evaluated the above medical interrogatory responses, and

stated:

> In November 2020, medical expert Suniti Kukreja-Barua, Ph.D.,
> provided responses to a medical interrogatory as to the claimant.  Dr.
> Kukreja-Barua opined that claimant experienced moderate limitations
> in his ability to make judgments on complex work-related decisions
> and carry out complex instructions; mild limitations in making simple
> work-related decisions and understanding and remembering complex
> instructions; and no limitations in understanding, remembering, and
> carrying out simple instructions.  Dr. Kukreja-Barua opined that
> claimant had marked limitations in responding appropriately to work
> situations and changes in a routine work setting; and mild limitations
> in interacting appropriately with the public, coworkers, and
> supervisors.  Dr. Kukreja-Barua opined that claimant had mild
> limitations in understanding, remembering, and applying information
> and in interacting with others; and marked limitations in
> concentrating, persisting, and maintaining pace and in adapting or
> managing himself.  Dr. Kukreja-Barua opined that claimant's
> "substance use exacerbates symptoms and prevents recovery" (Ex.
> 15F).  I find this opinion largely unpersuasive in that although some
> of the limitations noted by Dr. Kukreja-Barua are supported by the
> evidence, it is otherwise inconsistent with the medical evidence and
> the record as a whole, including the claimant's history of treatment
> and medications, the mental status examination findings, and the
> claimant's reported activities of daily living.  The evidence supports a
> finding that the claimant experiences moderate limitations in most
> "paragraph B" criteria, but the mild to moderate mental status
> examination findings in the record are inconsistent with the extent of
> limitations as provided by Dr. Kukreja-Barua (see Exs. 4F/2; 5F/5;
> 7F/19, 47; 1F/11-12, 20-22).  I also note that the opinion itself is
> internally inconsistent, providing mainly mild to moderate limitations
> in most regards but subsequently noting marked limitations in

11

concentration and in adaptation.  Although Dr. Kukreja-Barua opined
that claimant's substance use exacerbated his symptoms, it is unclear
if she intended her somewhat bifurcated opinion to pertain to a
materiality assessment of the claimant's drug abuse.  As such, it is
difficult to assess the opinion, and on the whole it provides little
insight into the claimant's function-by-function capabilities.

(ECF No. 9, PageID.100.)

### d.    Analysis

Plaintiff first asserts the ALJ's finding that Dr. Kukreja-Barua's opinion is

internally inconsistent because she found mainly mild to moderate limitations

alongside the marked limitations in concentration and adaptation is a "problematic

assessment."  (ECF No. 17, PageID.790-791.)  This argument fails.  As provided

above, supportability and consistency are the most important factors when

evaluating a medical opinion.  20 C.F.R. § 404.1520c(b)(2); *see also Hardy v.*

*Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905-06 (E.D. Mich. 2021).  And I see

no error in the ALJ's statement.  Consistent with the ALJ's findings, Dr. Kukreja-

Barua noted only mild, moderate, or no limitations in eleven areas, and marked

limitations in three areas.  (ECF No. 9, PageID.740-748.)

Plaintiff next takes issue with the following statement by the ALJ:

"Although Dr. Kukreja-Barua opined that claimant's substance use exacerbated his

symptoms, it is unclear if she intended her somewhat bifurcated opinion to pertain

to a materiality assessment of the claimant's drug abuse.  As such, it is difficult to

assess the opinion, and on the whole it provides little insight into the claimant's

function-by-function capabilities." (ECF No. 17, PageID.792-794 (quoting ECF No. 9, PageID.100).)  He asserts that the ALJ "simply threw out the entirety of the opinion because 'it is difficult to assess the opinion'." (ECF No. 17, PageID.792.) This assertion is obviously untrue.  First, the ALJ's analysis is accurate, as Dr. Kukreja-Barua only vaguely answered the first portion of the prompt asking whether substance abuse contributed to Plaintiff's impairments, writing that it exacerbates his symptoms and prevents recovery, but failed to respond to the second portion, which asked for an explanation of *what changes she would make if Plaintiff was abstinent from substance use.* (ECF No. 9, PageID.742.)  And second, the ALJ found Dr. Kukrja-Barua's opinion largely unpersuasive for other appropriate reasons, including internal inconsistency, and inconsistency with the medical evidence and record as a whole.  (ECF No. 9, PageID.100.)  *See* 20 C.F.R. § 404.1520c(b)(2).  Plaintiff fails to demonstrate any inaccuracies in these specific findings, and it is not within the province of the Court to re-weigh such evidence.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").  Nor is it the Court's task to comb through the record to find the evidentiary support for Plaintiff's position.  *Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich.

July 29, 2016) (Patti, M.J.), *report and recommendation adopted* at 2016 WL

4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

Furthermore, the argument regarding whether or not Dr. Kukreja-Barua's

opinion contained a materiality analysis is a red herring.  Plaintiff asserts in his

reply brief that Dr. Kukreja-Barua "most likely" assessed the marked limitations

due to his substance abuse (ECF No. 21, PageID.823), but she made no such

specific statement or connection on the interrogatory forms (ECF No. 9,

PageID.740-748).  Regardless, contrary to Plaintiff's argument that by rejecting the

opinion, the ALJ failed to factor into account those limitations related to his

substance abuse before formulating the RFC (ECF No. 21, PageID.824), the ALJ

extensively discussed Plaintiff's struggle with substance abuse throughout his

opinion.  At Step 2, the ALJ found Plaintiff's substance use disorder to be a severe

impairment.  (ECF No. 9, PageID.91.)  At Step 3, the ALJ evaluated the Paragraph

B criteria, and explicitly cited Plaintiff's substance abuse issues, stating:

> With regard to concentrating, persisting, or maintaining pace, the
> claimant has a moderate limitation.  Claimant alleges that he struggles
> to concentrate and persist to complete activities of daily living, and he
> had tangential speech and impaired concentration at times in treatment
> settings (Exs. 5F/5; 9F/8; 8F/17; Hearing Testimony).  However,
> claimant's treatment providers have also noted that he has the capacity
> to focus in clinical settings (Exs. 4F/2; 6F/2; 2F/6, 9-10; 9F/2, 11, 14;
> 7F/19, 47; 1F/11-12. 20-22, 36-38; 9F/42-43; 10F/9).  Moreover,
> claimant has reported engaging in activities that demonstrate his
> capacity in this domain, such as preparing simple foods, watching
> television, and attending college and barber school (Hearing
> Testimony).  Furthermore, the claimant's history of treatment and the

14

mental status examination findings, as discussed in further detail below, do not establish that he experiences marked or extreme limitations in this area. Therefore, I find that the claimant has a moderate limitation in concentrating, persisting, or maintaining pace.

As for adapting or managing himself, the claimant has experienced a moderate limitation. Claimant alleges that he struggles with stress, and the record establishes substantial issues with substance abuse and some suicidal ideation (Exs. 1F; 4F; Hearing Testimony). However, the record also reflects that claimant is capable of attending to his basic personal grooming, and he was able to obtain a four-year degree and a barber's license, suggesting adaptability and self-management (Hearing Testimony). Furthermore, the claimant's history of treatment and the mental status examination findings, as discussed in further detail below, do not establish that he experiences marked or extreme limitations in this area. Therefore, I find that the claimant has a moderate limitation in adapting or managing himself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(ECF No. 9, PageID.94-95.) Finally, <u>as part of the RFC analysis</u>, the ALJ stated:

Claimant presented to Easter Seals of Michigan in March and April 2018 for psychological assessment and medication management. He reported continued issues with methamphetamine use, homelessness, memories of trauma, anxiety, depression, sleep disturbance, and poor concentration. Claimant further reported that he struggled with task completion, but that he had not been in special education and had no issues with literacy. Claimant was anxious; but appropriately groomed, had normal psychomotor activity, intact speech and cognition, logical thought processes, and intact memory and concentration. Claimant was continued on hydroxyzine, citalopram, trazodone, and atomoxetine; and was encouraged to present for regular treatment as well as be consistent with his medications (Ex. 1F). Claimant was admitted for voluntary inpatient psychiatric treatment for approximately two weeks in December 2018. He presented to the emergency room with complaint of suicidal ideation and increased depression. It was noted that claimant was also abusing

alcohol, marijuana, and methamphetamine.  On initial presentation, claimant was depressed and tearful, anxious and withdrawn, and had tangential thought processes; but he was cooperative, had intact hygiene, had intact cognition and memory, and had fair insight.  It was also noted that claimant had intact gait, full strength, normal range of motion throughout, no tenderness to palpation in the back or joints, and lungs clear to auscultation.  Claimant was again prescribed quetiapine, sertraline, atomoxetine, and trazodone; was treated with individual and group therapy; and was discharged to Sacred Heart Rehabilitation in improved condition (Exs. 3F/2-9; 4F; 5F).

Claimant thereafter underwent thirty days of drug abuse rehabilitation services with Sacred Heart in January 2019.  He presented with anxious affect; but intact memory, orientation to place and time, appropriate thought content, and intact insight and judgment.  It was noted that claimant successfully completed treatment and although he continued to struggle with impulse control and emotional regulation, he made "good progress" (Ex. 6F).

* * *

Claimant presented for several days of psychiatric inpatient treatment in March 2019.  On initial presentation, he reported increased suicidal ideation and anxiety, and that his psychotropic medications had been stolen so he had not been taking his prescribed medications.  Claimant endorsed a lack of healthy supports or stability in his life.  Claimant presented with dysphoric mood and affect, and had some issues with memory testing; but appropriate hygiene, cooperative behavior, normal motor activity, normal speech, logical thought processes, intact concentration, largely intact memory and normal cognition, and intact judgment and insight.  Claimant was provided with sertraline, trazodone, quetiapine, and lorazepam; and was stabilized. On evaluation for further inpatient treatment or discharge, psychiatrist Dunyue Lu, M.D., noted "at present, [claimant] is not suicidal or homicidal.  He does not need inpatient psychiatric treatment.  He was declined by Macomb County Community Mental Health for inpatient psychiatric treatment.  He agrees to attend inpatient substance abuse treatment and get housing" (Ex. 9F/39- 59).

16

In March 2019, claimant presented to his primary care provider after discharge from the hospital.  He reported continued issues with depression and anxiety, homelessness, and methamphetamine use, but noted that ongoing drug rehabilitative services were helpful.  Claimant presented with intact gait, intact sensation, and intact motor strength. He was also cooperative, alert and oriented, had intact cognition and memory, had good insight and judgment, and had appropriate mood and affect.  Claimant was continued on his inhalers, bictegravir/emtricitabine/ tenofovir alafenamide, sertraline, atomoxetine, and melatonin; and his trazodone and quetiapine were discontinued per the claimant's request (Ex. 9F/1-5).

Claimant returned to Easter Seals of Michigan in April 2019 for case management and treatment.  He reported receiving ongoing drug rehabilitation services with Turning Point, but that he was concerned about his living situation following discharge.  Claimant further endorsed a history of trauma and abuse, anxiety, depression, sleep disturbance, issues with activities of daily living, and poor concentration.  Claimant presented with heightened affect, rapid speech, impaired concentration, and hyperactive motor activity; but he was appropriately groomed, had intact speech and cognition, had logical thought processes, and presented with intact memory. Claimant was continued on his medications and was encouraged to present for regular treatment (Ex. 8F).

During April 2019 primary care follow-ups, claimant reported issues with left leg numbness and tingling.  He also noted that rehabilitative services continued to be helpful and that "his mood has been relatively stable despite the methamphetamine withdrawal."  Claimant presented with flight of ideas; but had intact hygiene, and was alert and oriented.  He was continued on his medications and further prescribed trazodone and diphenhydramine (Ex. 9F/7-12).

\* \* \*

Over one year later, claimant presented to Summit Pointe in August 2020 for initial psychosocial assessment.  He endorsed continued depression, severe anxiety, sleep disturbance, poor concentration and memory issues, and a history of methamphetamine abuse with approximately eighteen months of sobriety. Claimant was

17

recommended to return for full psychiatric evaluation, as well as therapy and medication management (Ex. 10F/12-25).

During a follow-up medication review at Summit Pointe in September 2020, claimant reported continued anxiety, depression, memories of trauma, and disturbed sleep. Claimant presented with pressured speech and constricted affect and was noted to minimize his use of alcohol and drugs; but he was appropriate, had intact hygiene, and was clear and coherent. Psychiatrist Sajid Hussain, M.D., also noted that "[claimant] seems superficially motivated towards treatment." Dr. Hussain prescribed lithium, lamotrigine, and olanzapine; and discontinued quetiapine. Claimant was encouraged to present for regular therapy and medication management (Ex. 10F/2- 11).

At the hearing in this matter, claimant was tangential and had rapid and pressured speech, but he was responsive to questioning and was overall logical and coherent.

(ECF No. 9, PageID.96-99.) It is obvious from the above that the ALJ thoroughly and carefully considered Plaintiff's substance abuse issues throughout his opinion, including when formulating Plaintiff's RFC, and yet still found Plaintiff not disabled.

For this reason, Plaintiff's argument that the ALJ should have recontacted Dr. Kurkeja-Barua to clarify whether she reached a materiality determination also fails. The ALJ found her opinion unpersuasive for other reasons, and extensively considered substance abuse throughout his decision, finding Plaintiff not disabled. I fail to see how this clarification would make any difference to the ultimate determination. Furthermore, the ALJ had no such duty. In support of his assertion otherwise, Plaintiff cites a 2009 case from outside of the Sixth Circuit as well as 20

18

C.F.R. § 404.1512(e), which is, as the Commissioner points out (ECF No. 20, PageID.817), an outdated regulation. *See Hollis v. Comm'r of Soc. Sec.*, No. 13-13054, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015). Under the currently applicable rule, it is within the ALJ's discretion to recontact a medical source. *Id.* at *24 (citing 20 C.F.R. § 404.1520b(c)).

### 2.    The Court should find that the ALJ did not err by failing to conduct a materiality analysis

As provided above, Plaintiff has failed to demonstrate any error with the ALJ's determination that he was not disabled within the meaning of the Social Security. Consequently, no finding regarding materiality was necessary. Such a finding need only be made when a claimant is found disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.") (emphasis added). In other words:

> The Act provides in relevant part that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Commissioner implemented this standard by enacting 20 C.F.R. §§ 404.1535 and 416.935, which "clearly" require that the five-step sequential evaluation process be followed in the adjudication of disability "before any consideration is given to whether drug addiction [or alcohol abuse] is the cause of such disability." *Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004) (*citing Drapeau*

*v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001)); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); *Stroud v. Comm'r of Soc. Sec.*, 2011 WL 4576032, at *11-12 (E.D. Mich. 2011); *Kellett v. Colvin*, No. 13-12884, 2015 WL 181650, at *2 (E.D. Mich. Jan. 14, 2015). In other words, "[t]o find that drug addiction is a contributing factor material to the determination of disability without first finding the [plaintiff] disabled ... is to put the cart before the horse." *Williams*, 338 F.Supp.2d at 862. "If the five step sequential evaluation process, without removing the effects of substance abuse disorders from consideration, indicates that the plaintiff is not disabled then there is no need to continue with the substance abuse materiality analysis of 20 C.F.R. §§ 404.1535 and 416.935." *Stroud*, 2011 WL 4576032, at *11-12 (citing *Brueggemann*, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.")).

*Abousamra v. Kijakazi*, No. 1:21-cv-12917, 2023 WL 1997068, at *4 (E.D. Mich. Feb. 14, 2023) (Ludington, J.), *adopting report and recommendation* (Grand, M.J.).

Plaintiff argues that "the ALJ found [his] substance use disorder was a severe condition," but "[t]here is no explanation anywhere in the decision as to why the ALJ never reached a materiality determination." (ECF No. 17, PageID.796.) However, as provided at length above, the materiality determination is not triggered by finding substance use disorder as a severe impairment. Instead, the ALJ's finding, and subsequent analysis of Plaintiff's substance use and abuse, merely demonstrates that the ALJ thoroughly considered the full extent of Plaintiff's impairments when making his disability determination.

20

**F.      Conclusion**

Plaintiff has the burden of proof on statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 20), and **AFFIRM** the Commissioner of Social Security's decision.

**III.    PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

21

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  May 31, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

22